IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | C/A No. 6:17-cv-2010-TMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Dennis D. Brooks, Barbara D. | ) | **ORDER** |
| Brooks, Greenville County | ) | |
| Tax Collector, Coach Hills | ) | |
| Homeowner's Association, Inc., | ) | |
| and the South Carolina Department | ) | |
| of Revenue | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff United States of America (the "Government") filed this action seeking to reduce to judgment outstanding federal income tax liabilities against Defendant Dennis D. Brooks ("Brooks"), and to foreclose federal tax liens on real property ("the Subject Property") located at 10 Twin Oaks Court, Greenville, South Carolina, which is owned by Brooks and his wife, Defendant Barbara D. Brooks. (ECF No. 1). This matter is before the court on the Magistrate Judge's Report and Recommendation ("Report") recommending that the court grant the Government's summary judgment motion against Brooks (ECF No. 111). (ECF No. 160).[1] Defendant Brooks timely filed objections (ECF No. 169), and the Government filed a reply (ECF No. 172). This matter is now ripe for review.

---

[1]This matter was referred to a magistrate judge pursuant to 28 U.S.C. §636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(e), D.S.C., for pre-trial handling. (ECF No. 15). The magistrate judge's recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

# I. Background/Procedural History

The Government alleges that Brooks did not file federal income tax returns for the years 2000, 2005, 2006, 2007, and 2011. (ECF No. 111-2 at 2).[2] The Internal Revenue Service ("IRS") calculated the amount of income tax due for those years using a zero cost basis for the sale of stocks and/or mutual funds and sent notices of the deficiencies by certified mail to Brooks' last known address. (ECF Nos. 111-2 at 3-5; 9-51; 158-1 at 20-21, 31-32, 41-42, 48-49, 61-62, 65, 69-70). The notices for tax years 2005, 2006, and 2011 were returned to the IRS marked as return to sender and "unclaimed." (ECF No. 158-1 at 2-3, 4-5, 44-45, 67). The Secretary of the Treasury also gave notices to Brooks of the unpaid taxes and demanded payment. *Id.* at 5. Thereafter, the Secretary of the Treasury filed federal tax liens against the Subject Property. *Id.* at 5-6; 54-56.[3] The Government then filed this action seeking to reduce

---

[2]In his Answer, Brooks alleges that he believes he filed a tax return for the year 2000. (ECF No. 14 at 3). However, he has not argued that position in any other filing with the court and, in fact, he has recently filed under seal an unsigned and undated 1040 tax form for the year 2000 (ECF No. 156), which he wants the IRS to process, in support of his argument that in 2000 he actually had a capital gains loss. (ECF No. 142 at 3). In his objections, Brooks also for the first time argues that he filed his tax returns for the years 2005 and 2006. (ECF No. 169 at 5). He contends that a United States Postal employee, Lynn Jones, saw him place these returns in an envelope addressed to the IRS, and he attached an affidavit from Jones to his objections. *Id.* He also contends that he made a copy of the envelope before it was mailed, which he included as an attachment to his objections. *Id.* First, the postmark on the envelope is dated November 3, 2007, which would not support an argument that he timely filed his 2005 and 2006 tax returns. (ECF No. 169-2 at 27). Second, in his affidavit, Jones avers that he often made copies of documents for Brooks from 2007 until 2017, and while he stated that he recalled Brooks bringing in his tax returns for mailing, he could not recall for which years. (ECF No. 169-2 at 29). Neither of these attachments establish that Brooks timely filed his tax returns for the years 2005 and 2006. Additionally, Brooks has also submitted unprocessed, unsigned, and undated 1040 tax forms for the years 2005 and 2006. (ECF No. 156-1 and 2).

[3]The legal description of the Subject Property is as follows:

All that certain piece, parcel, or lot of land, situate, lying and being in the County of Greenville, State of South Carolina being shown and designated as Lot 110 on a plat of Coach Hills subdivision recorded in Plat Book 4X, Page 86 and refiled in Plat Book 4X, Page 94 in the Greenville County RMC Office and having, according said plat, the following metes and bounds, to-wit: BEGINNING at a

these liens to judgment against Brooks, to foreclose on the liens, and for the sale of the Subject Property. (ECF No. 1). As of August 6, 2018, the amount of the liens was $622,849.14. (ECF No. 111-1 at 4).

The Government also named the Coach Hills Homeowner's Association, Inc., the Greenville County Tax Collector (the "County"), and South Carolina Department of Revenue ("SCDOR") as Defendants "pursuant to 26 U.S.C. § 7403(b) by virtue of liens [they might] claim against" the Subject Property. (ECF No. 1 ¶ 7-9).[4] Because Coach Hills failed to file an answer or otherwise participate in this case, a default judgment was entered against Coach Hills. (ECF No. 138). The Government, the County, and the SCDOR have entered into a stipulation regarding the priority of their respective tax liens. (ECF No. 52).[5]

In his Answer, Brooks alleges that during the years in question, he suffered capital gains

---

point on the southern side of Twin Oaks Court at the joint front corner lots 109 and 110 and running thence with the side of said Twin Oaks Court N. 56-17 E. 23.29 feet to a point and N. 43-07 E. 26.56 feet to a point at the joint front corner of Lots 110 and 111; thence with the common line of said lots, S. 46-58 E. 153.26 feet to a point in the line in the line of Lot 112; thence with the line ofaid lot S. 32-12 W. 112 feet to a point in the line of property now or formerly of Mary Louise Tierney; thence with the line of said property N. 81-57 W. 100.18 feet to a point at the joint rear corner of Lots 109 and 110; thence with the common line of said lots, N. 3-23 E. 153.29 feet to the point of beginning and being the same property conveyed to Sue A. Alton, formerly Sue A. Smith by deed of Mary Elizabeth Briggs dated and recorded December 15, 1978 in the RMC Office for Greenville County, South Carolina, in Deed Book 1093, Page 830. This being the same property conveyed to Dennis D. Brooks and Barbara D. Brooks by that certain deed of Sue A. Alton dated December 17, 1979, and recorded in the Greenville County RMC Office in Book 1119, at Page 495, on January 24, 1980. Tax Map No. 0540010118900

(ECF No. 1 at 3).

[4]The court notes that the Government states that it named Barbara D. Brooks as a Defendant "because she may claim an interest in the real property which is the subject of this action." (ECF No. 1 at 2).

[5]In their stipulation, the parties agree that the County and the SCDOR were excused from further participation in this action, unless directed by the court. (ECF No. 52 at 3).

losses as a result of misrepresentations by his stock broker and that his stock broker had purchased unauthorized loaded mutual funds. (ECF No. 14 at 2). Brooks states that "the [IRS' assessed] amounts listed in the chart are erroneous as they did not take into account the cost basis for the years mentioned." *Id.* He further alleges that he was not advised that he could challenge the notices of deficiency. *Id.* He argues that he has now completed the tax returns for the years in question, and he wants the IRS to process these returns. *Id.*

On August 16, 2018, the Government filed the instant motion for summary judgment (ECF No. 111). The court entered a *Roseboro* Order explaining the summary judgment procedure and the consequences of failing to respond. (ECF No. 112).[6] The *Roseboro* Order was mailed to Brooks at his address of record, and it was not returned to the court. (ECF No. 115). Brooks did not respond, and on October 11, 2018, the magistrate judge entered a Report recommending that the motion be granted. (ECF No. 114). On October 16, 2018, rather than filing objections, Brooks filed a motion for an extension of time to respond to the summary judgment motion. (ECF No. 119). Brooks stated that he had not received a copy of the summary judgment motion and only became aware of it after receiving an email from the Government referring to the motion. *Id.* The Government filed a response in which it stated it did not object to Brooks being given an extension of time within which to file objections to the Report (ECF No. 122 at 2). The court declined to adopt the portion of the Report addressing the pending summary judgment motion and granted Brooks until November 16, 2018, to file a response to the motion for summary judgment. (ECF No. 125).[7] Further, the court recommitted the

---

[6]In *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Fourth Circuit Court of Appeals held that district courts are to provide an explanation of the dismissal/summary judgment procedures to pro se litigants.

[7]In his motion for an extension, Brooks stated that he had been experiencing issues with his mail and its delivery (ECF No. 119). In the order granting the extension, the court expressed its concerns that the issues with Brooks' mail had been ongoing for years and ordered Brooks to

4

summary judgment motion to the magistrate judge for further handling. *Id.* On November 16, 2018, Brooks filed a response opposing the summary judgment motion (ECF No. 142), and the Government filed a reply on December 3, 2018 (ECF No. 152). Brooks subsequently filed additional attachments on December 6, 2018 (ECF No. 156), and the Government filed an amended reply on December 13, 2018 (ECF No. 158). The magistrate judge filed her Report on December 19, 2018, recommending the court grant the Government summary judgment (ECF No. 160), and on January 2, 2019, Brooks timely filed objections to the Report (ECF No. 169).[8] The Government has filed a reply to those objections. (ECF No. 172).

## II. Applicable Law

### A. Summary Judgment

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). "Where the record taken as a whole could not lead a rational trier of fact to find

---

take action to ensure that he received his mail - either by securing his mailbox or procuring a post office box. (ECF No. 125). Subsequently, Brooks changed his address to a post office box. (ECF No. 135).

[8]Brooks has also filed additional attachments to his answer (ECF No. 14). (ECF Nos. 168 and 171).

for the non-moving party, disposition by summary judgment is appropriate." *Monahan v. County of Chesterfield*, 95 F.3d 1263, 1265 (4th Cir. 1996).

### B. Tax Assessment

It is well-settled that a tax assessment is entitled to a presumption of correctness. *United States v. Fior D'Italia*, 536 U.S. 238, 242 (2002); *see also United States v. Pomponio*, 635 F.2d 293, 296 (4th Cir. 1980). Therefore, the burden is on the taxpayer to overcome this presumption by persuading the finder of fact, by a preponderance of the evidence, that the assessment is incorrect. *United States v. Janis*, 428 U.S. 433, 440 (1976). A taxpayer challenging such an assessment must establish the correct amount, if any, of taxes due. *United States v. Sage*, 412 F. Supp. 2d 406, 416 (S.D.N.Y. 2006); *see also Helvering v. Taylor*, 293 U.S. 507, 514-15 (1935). This burden cannot be satisfied merely by self-serving statements from the taxpayer. *Liddy v. Commiss'r of Internal Revenue*, 808 F.2d 312, 315–16 (4th Cir. 1986). If no countervailing proof is introduced, "the trial court [is] . . . justified, in fact required, to enter summary judgment for the amount of the taxes proved to be due." *United States v. Dixon*, 672 F.Supp. 503, 507 (M.D. Ala. 1987) (quoting *Lane v. United States*, 328 F.2d 602, 603 (5th Cir. 1964)). Additionally, the IRS may properly assign a cost basis of zero when the taxpayer fails to establish his basis in a given stock sale. *See Coloman v. Comm'r of Internal Revenue*, 540 F.2d 427 (9th Cir. 1976).

### III. Discussion

In this case, the Government is seeking to reduce to judgment federal income tax assessments against Brooks for the tax years 2000, 2005, 2006, 2007, and 2011, and to foreclose the related federal tax liens against Brooks' real property located at 10 Twin Oak in Greenville, South Carolina. In its motion for summary judgment, the Government contends that it is undisputed that federal income tax assessments have been made against Brooks for the tax years

2000, 2005, 2006, 2007, and 2011, and that Brooks owes $622,849.14 in back taxes and penalties. (ECF No. 111). The Government argues that the assessments are presumed to be correct, and Brooks has failed to produce admissible evidence sufficient to rebut that presumption. (ECF No. 111-1 at 7). Specifically, the Government contends that the documents that Brooks seeks to rely upon, including 1040 tax returns prepared only after this action was filed and alleged business records, are inadmissible hearsay. *Id.* at 9. Moreover, the Government contends Brooks' uncorroborated and self-serving testimony regarding the cost basis is insufficient as a matter of law. *Id.* at 10. The Government also argues that the facts establish that federal tax liens have properly attached to the Subject Property. (ECF No. 111 at 1). The Government asks the court to enter judgment against Brooks in the amount of $622,849.14, plus penalties and interest that continue to accrue, and also order the foreclosure and sale of the Subject Property. (ECF No. 111-1 at 12).

In his response, Brooks first argues that he never received the notices of deficiency from the IRS and that the Government has not presented any proof that the notices were sent. (ECF No. 142 at 1-3, 4-5, 7). Second, Brooks contends that the IRS failed to take into account the cost basis of the mutual funds, and that, if the IRS had included the proper cost basis, the IRS would have determined that Brooks had a net capital gains loss for the years in question and actually did not owe any taxes. *Id.* at 3. Brooks contends that the 1040 tax returns he has proffered are not hearsay and are admissible under Federal Rule of Evidence 803(6). *Id.* at 6. Finally, Brooks contends that the Government failed to provide him with copies of his 1099-B forms during discovery. *Id.* at 6-7, 9.

In her Report, the magistrate judge addressed Brooks' argument regarding discovery, determined that Brooks has not been diligent in pursuing discovery, and recommended that the court deny his requests to compel the production of 1099-B forms and deny his request for more

7

discovery. (ECF No. 160 at 7-8). On the merits of the summary judgment motion, the magistrate judge determined that the Government has shown that there is not a genuine issue of material fact regarding whether the deficiency notices had been properly sent to Brooks. *Id.* at 11. The magistrate judge also determined that the proffered 1040 tax forms cannot be considered for purposes of deciding this summary judgment motion because they are hearsay. *Id.* at 13-14. She concluded that Brooks had not rebutted the presumption of correctness that attaches to the tax assessments made against him. *Id.* at 14-15. Further, the magistrate judge determined that Brooks' own vague, uncorroborated, and self-serving testimony that he had some basis in the stocks is also insufficient to meet his burden of establishing his basis. *Id.* at 14. Turning to Brooks' objections, the court will address each in turn below.

In his objections, Brooks first contends that the magistrate judge erred by failing to view the facts in a light most favorable to him. (ECF No. 169 at 1). He does not point to any specific error, but rather states that the magistrate judge evaluated "every aspect of the 'summary judgment record'" in a light most favorable to the Government. *Id.* The court finds that this objection is a general, conclusory objection which does not warrant de novo review and is without merit. *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). Accordingly, the court must only satisfy itself that there is no clear error. *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005). Upon review, the court finds that the fact section of the Report does not contain any clear error. Accordingly, the court overrules Brooks' general objection as to the fact section of the report.

Brooks also objects to the magistrate judge's recommendation that the court deny Brooks' request to defer ruling on the Government's summary judgment motion pending more discovery. (ECF No. 169 at 2). Brooks contends that he needs the 1099-B forms to establish that the cost basis used by the IRS to calculate his taxes is incorrect. *Id.* Brooks argues that on

June 18, 2018, and June 21, 2018, he sent the Government discovery requests asking for the production of any correspondence between the IRS and third parties, which he argues included any 1099-B forms. *Id.* Brooks contends that the Government did not include any 1099-B forms in its response, and that the Government is deliberately withholding requested discovery material. *Id.* The court finds this objection is without merit.

In the amended scheduling order filed on December 12, 2017, discovery was to have been "completed no later than June 21, 2018." (ECF No. 43 at 2). Further, the order provided that "[d]iscovery shall be deemed completed within this time only if discovery is initiated at such time as to afford the responding party the full time provided under the applicable rule of the Federal Rules of Civil Procedure in which to respond prior to the discovery completion date noted in this paragraph." *Id.* Accordingly, Brooks' discovery requests of June 18th and 21st were untimely. Moreover, if Brooks believed that the Government failed to adequately respond to a discovery request, the proper course of action would have been to timely move the court to compel the production, which Brooks did not do. In his objections, Brooks also contends that the magistrate judge erred in determining that the proposed tax returns and other documents, such as the stock broker records, are inadmissible to rebut the presumption of correctness of the assessments. (ECF No. 169 at 6).[9] Brooks contends that these documents are admissible under Rule 803(6) as business records. *Id.* The court disagrees.

Hearsay evidence which is inadmissible at trial cannot be considered on a motion for summary judgment. *Maryland Highways Contractors Ass'n, Inc. v. State of Md.*, 933 F.2d 1246,

---

[9]Brooks argues that if the Government had complied with his discovery requests, he would have been able to use the 1099-B forms to rebut the assessments. (ECF No. 169 at 6). The court agrees that 1099-B forms may have been admissible. However, Brooks failed to timely request these in discovery or file a motion to compel, and, as discussed above, the Government has declared that no responsive documents were withheld. (ECF No. 172-1 at 2). Moreover, whether the 1099-B forms would have rebutted the presumption of correctness as to the assessments is entirely speculative.

9

1251 (4th Cir. 1991). The proffered 1040 tax forms, which are undated and unsigned tax forms prepared by Brooks (ECF No. 156), do not rebut the presumptively correct tax assessments because they are hearsay documents. *See Buaiz v. United States*, 521 F.Supp.2d 93, 97 (D.D.C. 2007); *Blodgett v. Comm'r IRS*, 394 F.3d 1030, 1040 (8th Cir. 2005) ("[a] tax return is generally considered inadmissible hearsay with the exception that the return may constitute an admission by the taxpayer); *see also Mays v. United States*, 763 F.2d 1295, 1297 (11th Cir.1985) (to overturn an assessment a taxpayer must offer "something other than tax returns, . . . uncorroborated oral testimony, . . . or self-serving statements").[10]

As for the stock broker records, Brooks has submitted an affidavit from Roger Sims, a financial advisor at Sims & Karr Financial Services, who avers that Brooks and his wife transferred their account into Raymond & James in 2005 "in kind" and that the attached "statements [are] a true and accurate representation of the assets (mutual funds and stocks) owned by Mr. And Mrs. Brooks." (ECF No. 156-5 at 1). Attached to Sims' affidavit are one page from a statement from 2000, a 1099-B form from 2000, and two pages from a 14-page "Tax Information Statement" from 2007. (ECF No. 156-6).

The "business records" hearsay exception, found in Federal Rule of Evidence 803(6), provides for the admissibility of a record that would otherwise be inadmissible as hearsay under Federal Rule of Evidence 802. Specifically, Rule 803(6) provides:

> (6) Records of a Regularly Conducted Activity. A record of an act, event, condition, opinion, or diagnosis if:

---

[10]To the extent that Brooks have argued that the tax returns are admissible as an opposing party's statement pursuant to Federal Rule of Evidence 801(d)(2) (ECF Nos. 142 at 5; 169 at 6), this argument is without merit. To qualify as such an admission, the party's out-of-court statement must be offered against that party. In other words, the party cannot offer its own out of court statements as admissions. *See Lorraine v. Markel Am. Ins. Co.*, No. PWG-06-1893, 241 F.R.D. 534, 567 (D.Md. May 4, 2007) (citing Weinstein <u>Federal Evidence</u> at § 801.30[1] ("To be admissible under [Rule 801(d)(2)], the party's statements must be offered against that party. A party cannot use this provision to offer his or her own statements into evidence.")).

(A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). Accordingly, "business records are not excluded under the hearsay rule if they are accompanied by a certification of their custodian or other qualified person asserting (1) that the records were 'made at or near the time by, or from information transmitted by, a person with knowledge'; (2) that they were 'kept in the course of a regularly conducted business activity'; and (3) that 'it was the regular practice of that business activity to make [them].'" *United States v. Santana*, 352 Fed. App'x 867, 871-72 (4th Cir. 2009) (unpublished per curiam decision). Here, the affidavit of Sims does not meet the requirements necessary to allow admission under the business records exception. Sims does not state that he is the record custodian, and he does aver that these documents were not made by a person with knowledge or kept in the regular course of business. *See Collins v. Kibort*, 143 F.3d 331, 337-38 (7th Cir. 1998) ("While Rule 803(6) does not require the qualified witness be the person who prepared the record, or that the witness have personal knowledge of the entries in the record, the business records exception does require that the witness have knowledge of the procedure under which the records were created.").[11] Accordingly, the court finds Brooks' objections are without merit.

---

[11]Additionally, the court notes that Sims avers that "[t]he transferring Scott & Stringfellow statements were a true and accurate representation of assets (mutual funds and stock) owned by Mr. And Mrs. Brooks." (ECF No. 156-5 at 1). However, it is unclear what

11

In his objections, Brooks also contends that he had only two days of limited discovery - apparently referring to the time between when he received the Government's responses to his discovery requests and the Government's filing of this summary judgment motion. (ECF No. 169 at 6). However, when the Government filed its motion for summary judgment, discovery had been closed for over a month. As discussed above, Brooks did not make timely discovery requests or file a motion to compel. Accordingly, the magistrate judge did not err in declining to defer consideration of the Government's summary judgment motion and denying further discovery.

Turning to the sufficiency of the notices, the court notes that the notice requirement of the Internal Revenue Code is set out in 26 U.S.C. §§ 6212 and 6213. If the IRS determines that there is a deficiency of any income tax, it is authorized to send a notice of such deficiency to the taxpayer by certified mail or registered mail. *See* 26 U.S.C. § 6212(a). Section 6212(b)(1) provides that notice mailed to the taxpayer at his "last known address" is sufficient notice for purposes of § 6212(a). After the statutory notice is mailed, the taxpayer has 90 days within which to petition the Tax Court for a redetermination. *See* 26 U.S.C. § 6213(a). No collection action may be maintained against the taxpayer until notice has been mailed to the taxpayer and the ninety-day period has run and, if a petition has been filed with the Tax Court, until the judgment of the Tax Court has become final. *See* 26 U.S.C. § 6213(a).

The IRS satisfies its obligation if it mails the notice "to the taxpayer's last known address, even if the taxpayer does not actually receive the notice." *Guthrie v. Sawyer*, 970 F.2d 733, 737 (10th Cir. 1992); *see also Tatum v. Comm'r*, 85 T.C.M. (CCH) 1200, 2003 WL 1918914, at *3 n.4 (2003) (noting that IRS satisfies § 6212's mailing requirement by sending notice to

---

documents Sims is referring to as "the transferring Scott & Stringfellow statements."

taxpayer's last known address "regardless of receipt or nonreceipt"). In *Brown v. Lethert*, 360 F.2d 560 (8th Cir. 1966), as here, the IRS sent a notice of deficiency by certified mail to a taxpayer at his last known address, and the notice was returned to the IRS as unclaimed. *Id.* at 561. The taxpayer argued that such a mailing did not satisfy § 6212, and that the IRS was required to make further attempts at providing notice when the mailing was returned unclaimed. *Id.* The court, however, held that § 6212 does not require actual receipt of the mailing, and that a notice sent by certified mail to a taxpayer's last known address complies with the statutory requirements, even if it is returned unclaimed. 360 F.3d at 562. Section 6212 has not changed since *Brown*. The statute provides that the notice need only be "mailed," and such notice "shall be sufficient" if it is "mailed to the taxpayer at his last known address." 26 U.S.C. § 6212(b)(1); *see also Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 817 (2d Cir. 1985) (holding that proof of proper mailing raises presumption that contents were received; and some proof beyond mere denial of receipt must be adduced to overcome presumption and thereby survive summary judgment). Here, the notices sent by certified mail to Brooks' last known address were sufficient under § 6212.

Moreover, the IRS does not owe a taxpayer any duty to make further efforts to reach the taxpayer once a deficiency notice which was mailed to the taxpayer's last known address is returned unclaimed. *See Trail's End Motels, Inc. v. Comm'r of Internal Revenue*, 532 F.Supp. 85 (D. Kan. 1982); *Zikria v. Williams*, 535 F.Supp. 481 (W.D. Pa. 1982).[12] A taxpayer's failure

---

[12]Further, the court notes that the notices of deficiency which were returned to the IRS were marked "Unclaimed" as opposed to "Addressee Unknown," "Insufficient Address," or "Unable to Forward," indicating that certified mail notices were left at the correct address, but were simply not claimed. *See, e.g., Erhard v. Comm'r*, 68 T.C.M. (CCH) 192, T.C. Memo.1994-344, 1994 WL 386178, *5 (9th Cir. 1994); *United States v. Eisenhardt*, 437 F.Supp. 247 (D.Md. 1977).

to claim the certified letter containing the notice of deficiency is insufficient to defeat a proper mailing. *Cohen v. United States*, 297 F.2d 760 (9th Cir. 1962); *Brown v. Lethert*, 360 F.2d 560 (8th Cir. 1966); *Lewin v. Comm'r*, 569 F.2d 444 (7th Cir. 1978).

> [I]f the IRS had to follow up every unsuccessful mailing to a taxpayer's last known address with further efforts to reach him, the "obviously impossible" administrative burden that Section 6212(b) and its predecessors were designed to eliminate, see H.R.Rep. No. 2, 70th Cong., 1st Sess., at 22; S.Rep.No.960, 70th Cong., 1st Sess., at 30, would be reimposed, and well-established case law to the effect that Section 6212(b) does not require actual receipt of deficiency notices, see, e.g., *Wilson v. Commissioner*, 564 F.2d 1317 (9th Cir. 1977); *United States v. Ahrens*, 530 F.2d 781 (8th Cir. 1976); *Delman v. Commissioner*, 384 F.2d 929 (3rd Cir. 1967); *Luhring v. Glotzbach*, 304 F.2d 556 (4th Cir. 1962), would be rendered meaningless.

*Trail's End Motels*, 532 F.Supp. at 89.[13] As discussed above, it is undisputed that the Government complied with § 6212 in sending Brooks notices of deficiency by certified mail to his last known address, and there is not a genuine issue of material fact regarding whether the deficiency notices were sufficient. Accordingly, Brooks' objections are without merit.

### IV. Conclusion

Based on the foregoing, the court finds that Dennis Brooks is liable for the unpaid tax assessments against him. Accordingly, the court adopts the Report and Recommendation (ECF No. 160) and **GRANTS** the Government's summary judgment motion (ECF No. 111).[14]

---

[13]Additionally, absent clear evidence to the contrary, employees of the United States Postal Service are presumed to have properly discharged their official duties and attempted to deliver the certified mail. *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15 (1926) ("The presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.").

[14]The Government, the SCDOR, and Greenville County, agree that the Government's liens with an assessment date of July 30, 2007, for the year 2000 tax period and with an assessment date of May 11, 2009, for the year 2005 and 2006 tax periods occupy first position; followed by an SCDOR lien from November 25, 2009 assessments for the tax years 2005 and 2006; then followed by the Government's liens from an assessment date of April 26, 2010, for

The Government is to submit a proposed order within 21 days consistent with this order to effectuate the foreclosure and sale of the Subject Property. Additionally, the court notes that a default judgment has been entered against Defendant Coach Hills, and that it has no interest in the Subject Property.

**IT IS SO ORDERED.**

s/Timothy M. Cain<br>United States District Judge

February 15, 2019
Anderson, South Carolina

**NOTICE OF RIGHT TO APPEAL**

The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.

---

tax year 2007 and an assessment date of December 29, 2014, for tax year 2011. (ECF No. 52).